## Wells *v.* Patterson *et al.*

By the provisions of the act of 1837, all the makers and indorsers of a note, living and resident in the state, must be joined in the same action; and a non-joinder will be good ground for a plea in abatement.

It is error to exclude from the jury, under a plea of payment, a receipt for notes taken in payment of the claim sued on, by the agent of the plaintiff.

IN ERROR from the circuit court of the county of Franklin.

This was an action of assumpsit on a promissory note, brought by Patterson & Wiswall, as indorsers of a promissory note made by Wiley Wells, payable to Joseph George, or order, and by him indorsed.

The defendants pleaded in abatement the non-joinder of George in the suit, alleging him to be a resident citizen of the state of Mississippi. To this plea there was a demurrer, which the court sustained.

The defendant, having plead to the action, offered to read in evidence, as proof of payment, the following receipt, the agency of Watson being first proved:

"Meadville, March 7th, 1838. Received from Wiley Wells, James Henington (note) for one hundred and fifty-five dollars twenty-nine cents; also, John D. Ford's note for ninety-six dollars ninety-one cents, for account of note which we hold against Wiley Wells.

[Signed]      PATTERSON & WISWALL, for H. Watson."

Which receipt the court excluded from the jury. Verdict and judgment for plaintiffs.

CASSEDY, for plaintiff in error, insisted,

1. That the court erred in sustaining the demurrer to the defendants' plea in abatement.

Wells *v.* Patterson.

2. In ruling out the receipt offered by the defendant as evidence of payment.

O. J. STUART for defendant in error.

The first error assigned is, that the court below erred in sustaining the demurrer to the plea in abatement. The correctness of the decision of the court below depends upon the construction of the statute of 1837, requiring the holder of a bill or note to sue all of the drawers and indorsers, in the same action, who are resident in this state at the time of the commencement of the action. In the construction of this, as all other statutes of a remedial character, the court will consider—

1. What the common law was before.

2. What the mischief was for which the common law had not provided.

3. The remedy that is by the statute provided for the mischief.

4. The true reason of the remedy. See Bacon's Abridgment, vol. 6, page 383.

Before the passage of this statute the holder of a bill or note might sue any one of the several drawers or indorsers separately. The mischief was, that the country being flooded with these paper securities, the practice under the common law authorized a multiplicity of suits upon the same security, and which, according to the practice before the passage of our statutes, saddled the debtor class of community with an unnecessary and grievous burthen of costs. Under the common law, the holder of the security might elect which of the parties to the bill or note he would make the money out of, by reason of which the money was often made out of the indorser when the principal had sufficient estate, within the jurisdiction of the court, out of which the debt could have been made. The forgiving or relinquishment of the debt against the indorsers, and suing the principal, who was responsible to all subsequent holders, and making him pay the debt without harrassing his sureties, was certainly not an evil, in the estimation of the legislature, which they designed to remedy by the act of 1837. To remedy the evil before stated, they required that, in future, all of the parties should be sued together, in a joint, not in a several, action. The true reason of the statute was to protect indorsers

against being harrassed when the principal was resident in the same jurisdiction, having sufficient estate out of which the money might be made, and to avoid the unnecessary costs arising from a multiplicity of suits, by giving a joint action against the several obligors, who, by the common law, were severally bound.   The language of the statute, "the plaintiffs shall be compelled to sue the drawers and indorsers, living and resident in this state, in a joint action," certainly, according to the letter, embraces an action against all of the obligors, whether they be principal or indorser. But, as suing the principal alone, and thereby releasing the indorser, was not an evil designed to be remedied by the legislature in the passage of this act, it is certainly not within the spirit and intention of the act.   "A thing which is within the letter of a statute, is not within the statute unless it be within the intention of the maker."   Bac. Abr. vol. 6, p. 335, bottom of page.   He who sticks to the letter sticks to the bark.   Co. on Litt.   Statutes are to be construed according to the intention of the makers.   Bac. Abr. vol. 6, p. 380.   If the literal expressions of the law would lead to absurd, unjust or inconvenient consequences, such a construction should be given as to avoid such consequences, if, from the whole purview of the law, and giving effect to the words used, it may be done.   Idem. 380.   The general language of the statute is qualified by the provisions of the 7th and 10th sections thereof, restraining the plaintiff from making the money out of the indorsers until the estate of the principal is first exhausted, or a showing made by affidavit that such principal has no property. The general words in one clause of a statute may be restrained by the particular words in a subsequent clause of the same statute—Bac. Abr. vol. 6, page 381—and the reason is the same for explaining the general words by subsequent particular provisions.

It is contended for the appellees, that the action was well brought against the maker of the note alone, as the suing of the principal was equivalent to a release of the indorser; and the recovery against Wells, the principal, would be a good plea in bar to any future action against George, the indorser.   The law regards an indorser as surety to the holder of a bill or note; and surely the holder has a right to relinquish the demand against the surety, and seek redress against the principal debtor.   The statute

Wells *v.* Patterson.

of 1837, requiring the plaintiff to exhaust the estate of the principal, if he have any, before he can go upon the surety, is not contravened when the plaintiff below seeks no recovery against the surety at all. Had the surety been sued alone, that would have been in contravention of the statute, and he might have. availed himself of the fact of the maker living in the state in a plea of abatement. To have sued both would have occasioned a greater amount of costs in bringing both parties before the court, and one of the objects of the statute of 1837 was to lessen the costs of litigation. It is not for the principal debtor to plead matter arising under a statute passed for the benefit of indorsers, in order to defeat a recovery sought to be obtained against him for his own debt. The fact of the plaintiff's having failed .to harass his indorser by a suit, is a matter as ridiculous as novel, when set up as a matter of defence by the appellant. The recovery against the principal does him no injury. The law only gives judgment against him for the amount he has contracted to pay. He has no right to insist that we shall recover against his surety, if we recover against him. It never was the intention of the legislature to deprive a man of his right of forgiving an obligor who stood as surety for the principal debtor. The right of relinquishment or forgiveness is a right beyond the power of the legislature to diminish or disturb. It is one of those rights which every member of society reserves, and has never surrendered to the community; and any law in derogation of such right, would not only be unconstitutional but absurd.

The second error assigned is, that the court below erred in not permitting the receipt offered by the appellant to be read to the jury. The receipt is not for money, but for notes, and no particular note is designated to which the credit is to be applied. An agency to receipt for payment made on a note does not necessarily arise from the fact of a man's being employed to post the books of a firm, to act as their clerk; for salesmen are called clerks, as was proven to be the case in this suit. A particular agency for that purpose should have been proven before offering the receipt to the jury.

But even suppose that the law drew such an inference, or that it had been positively proven that the book keeper Watson, who

signed the receipt, was the authorized agent of Patterson & Wiswall, to make collections; still, as the payment made to him was not in money but in notes, he cannot avail himself of such payment in action brought by Patterson & Wiswall. He must go on the agent for the amount of the notes transferred to him. Payment of a bill or note must always be made in money; and an agent authorized to receive payment generally, cannot receive goods in payment. Chitty on Bills, eighth American edition, page 433; 2 Saunders' Pleading and Evidence, 269. The doctrine is, that payment must be made in money, if made to an agent; or a special authority from the principal to the agent, first shown to the court, to take something else than money, in order to render the principal responsible upon the score of his privity for the act of such agent. Unless a special authority is shown to take any thing else than money in payment, the agent who receives a different species of value than what the note or bill calls for, exceeds his authority, and the principal is not bound by his act. And no such special authority appears from the record to have been shown the court below. Any other arrangement by an agent acting under a general authority, is contrary to the course of business and the law, and amounts to a fraud between the debtor and agent against the rights of the principal.

Again: The receipt offered could not have been read in evidence to the jury, even had it purported to have been given for so much money; because no particular note is named upon which the credit is to be given. The receipt does not show upon its face any connection or identification with the note sued on. It was foreign to the matter in issue upon its face, and the court below did well to reject it upon that ground, as its identity with the note sued on was not established. If the payment was made on the note in controversy, the appellant should have first proven it by parol, and identified the receipt as being for the payment of the amount on the particular note in suit. If he had no evidence by which he could establish such fact, he might, by filing his petition in the nature of a bill of discovery, prayed a disclosure on the part of the holders, as to such fact, in aid of his defence. If presumptions are to be indulged in, the presumption that Patterson & Wiswall, who appear from the record to be merchants, at the time

Wells *v.* Patterson.

of the receipt held some other note against Wells, on which he made this partial payment, and then subsequently discharged the balance, and took up the note and retained this receipt, is just as strong as that payment was made on the note sued on. So the presumptions balance each other, and amount to nothing.

Opinion of the court by TURNER, Justice.

This was an action of assumpsit, brought by the plaintiffs below, Patterson & Wiswall, as indorsees of a promissory note, made by the defendant, Wiley Wells, payable to Joseph George, or order, and by him indorsed.

The defendant pleaded in abatement that J. George, the indorser, was not joined in the suit, he being a resident citizen of this state. The plaintiffs demurred, and the court sustained the demurrer; whereupon the defendant plead to the merits, and on issues joined there was a verdict and judgment for the plaintiffs. On the trial of the cause, a bill of exceptions was taken to the opinion of the court ruling out a certain receipt.

The act of May, 1837, Hut. & How. Dig. p. 595, sec. 33, provides, "That in all actions founded upon bills of exchange and promissory notes, the plaintiff shall be compelled to sue the drawers and indorsers, living and resident in this state, in a joint action." The language of this statute is very full, plain and explicit, and was intended to prevent multiplicity of suits, and to save costs. But the defendants in error contend that the intention of the legislature was not only to prevent these consequences, but to compel the holders of such notes, &c. to proceed against the makers or principals, and that in this case the spirit of the law is complied with, as the suit is against the maker of the note.

It is true that one object of the law is thus fulfilled. But, to sustain their demurrer, they must show further that they could not sue the indorser, or that the indorser was non-resident. We are therefore of opinion, that the plea in abatement should have been sustained, and the suit abated.

This view of the case renders it unnecessary to notice the other ground of error relied on. We have no doubt but that the court also erred in ruling out the receipt offered in evidence by the de-

4*

Wells *v.* Patterson.

fendant below.    It was not of itself full proof of payment, but was a link in the chain of evidence tending to the proof of payment.

Judgment reversed; and this court, proceeding to render such judgment as the court below should have rendered, doth order and adjudge that the demurrer to the plea in abatement be overruled, and that the suit be abated, at the cost of the defendants, Patterson & Wiswall.